NO. 22-1847

In the united States court of Appeals
For the seventh circuit

Joshua Hoskins, #R54570
PlAintiff-Appellant

VS.

NATHAN Chapman and Rveter
Defendant-Appellees

On Appeal from the united
STATes District court
Southern District Of Illinois
EAst St. Louis Division
court NO. 3:20-cv-00508-GCS
MAgistrate Judge
Gilbert C. Sison

PlAintiff-Appellant Brief

Disclosure Statement

# Table of Contents

(1.) Jurisdictional statement

(2.) Statement of the issues presented for review

(3.) Statement of the case

(4.) Summary of the Argument

(5.) Argument

(6.) Conclusion

(7.) Certification

(8.) Appendix

(9.) Standard of review

# Table Of Authorities

(1.) ARNett v. Webster 658 F.3d 742 750 (7th Cir. 2011)

(2.) Bridges v. Gilbert 557 F.3d 541, 553 (7th Cir. 2009)

(3.) Cooper v. Casey 97 F.3d 914, 916 (7th Cir. 1996)

(4.) Edwards v. SNyder 478 F.3d 827, 830 (7th Cir 2007)

(5.) Farmer v. Brennan 511 U.S. 825 (1994)

(6.) Green v. Daley 414 F.3d 645, 652-653 (7th Cir. 2005)

(7.) Gutierrez v. peters 111 F.3d 1364, 1373 (7th Cir. 1997)

(8.) Gomez v. Randle 680 F.3d 859, 866 (7th Cir. 2012)

(9.) Guji v. Reed 381 F.3d 649, 662 (7th Cir. 2004)

(10.) Grieveson v. Anderson 538 F.3d 763, 779 (7th Cir. 2008)

(11.) Han v. Tangherlin 724 F.3d 965, 968 n.1 (7th Cir. 2013)

(12.) Hudson v. mchugh, 148 F.3d 859, 863 (7th Cir. 1998)

(13.) Johnson v. SNyDer, 444 F.3d 579, 584-585 (7th Cir. 2006)

(14.) King v. Kramer, 680 F.3d 1013 (7th Cir. 2012)

(15.) Langston v. peters 100 F.3d 1235, 1240 (7th Cir. 1996)

(16.) miller v. Campanella 794, F.3d 878 (7th Cir. 2015)

(17.) maddox v. Love 665 F.3d 709. 722 (7th Cir. 2011)

(18.) petties v. Carter 836 F.3d 722, 730 (7th Cir. 2016)

(19.) Rasho v. Elyea 856 F.3d 469 475 (7th Cir. 2017)

(20.) Ralston v. mcgovern 167 F.3d 1160, 1161-62 (7th Cir. 1999)

(21.) Rodriguez v. plymouth Ambulance serv. 577 F.3d 816 832 (7th Cir. 2009)

(22.) Sellers v. Henman 41 F.3d 1100, 1102 (7th Cir. 1994)

(23.) Thomas v. Walton 461 F.Supp.2d 786, 793 (S.D.Ill 2006)

(24.) Turley v. Rednour 729 F.3d 645, 650 (7th Cir. 2013)

(25.) Walker v. Thompson 288 F.3d 1005, 1008-09 (7th Cir. 2002)

(26.) Williams v. Liefer 491 F.3d 710, 716 (7th Cir. 2007)

(27.) Wynn v. Southward 251 F.3d 588, 594 (7th Cir. 2001)

(28.) Zimmerman v. tribble 226 F.3d 568, 573 (7th Cir. 2000)

# Jurisdictional Statement

the APPELLANT Joshua Hoskins Appeals to this seventh
Circuit Court of appeals after Receiving a Judgment from
a Magistrate Judge In the United states District Court
for the Southern District of Illinois the seventh Circuit
Court of appeals HAS Jurisdiction Over the United states
District Court for the Southern District of Illinois Courts

# Statement of the Issues presented for review

(1.) Whether the District Court Magistrate Judge erred finding that defendant Chapman didn't violate the plaintiff-Appellant first and Eighth Amendments by making the plaintiff-Appellant wait months to get fillings in each cavity, due to plaintiff-Appellant filing grievances, constantly submitted sick call slips to Dental staff, complained repeatedly to prison staff about his dental issues and Need for Emergent dental care.

(2.) Whether the District Court erred in finding that the plaintiff-Appellant didn't have to Name the Defendant-Appellee Chapman in his grievances, to been exhausted, addressed to the defendant addressed to the Defendant-Appellee

(3.) Whether the Defendant-Appellee Chapman conduct of making the plaintiff-Appellant wait months for each cavity to be filled and Denying the plaintiff-Appellant Antibiotics and other medications for filing grievances, constantly submitted sick call slips to dental staff and complained to prison staff about plaintiff-Appellant dental conditions Need for dental care violated the plaintiff-Appellant first and Eighth Amendment constitutional Rights

(4.) Whether the District court erred denying the plaintiff-Appellant motion for Reconsideration

(5.) Whether the District court Magistrate Judge erred finding that since another Dentist at a facility where the plaintiff-Appellant had transfered to who extracted the plaintiff-Appellant lower left tooth, the plaintiff-Appellant dental conditions was never serious, emergent during the entire time the plaintiff-Appellant was in need and attempted to get dental care from the Defendant-Appellee when he was housed at the Pinckneyville C.C. (I.D.O.C.) prior to plaintiff-Appellant transfering away from the facility where the Defendant-Appellee conduct at.

(6.) WAS SUMMARY Judgment properly granted.

-2-

## Statement of ~~the~~ Case

(1.) While the plaintiff-Appellant was a prisoner Housed within Pinckneyville Correctional Center (IDOC) from June 2019 - June 2020 the plaintiff Appellant had serious dental issues that caused for emergent need of dental care during the relevant time period. Mentioned the plaintiff-Appellant complained to numerous of prison staff about his dental issues, seeked help. Filed grievances and submitted sick call slips. the Defendant Chapman Appellee ignored and denied plaintiff-Appellant dental care needs, due to plaintiff-Appellant filling grievances about his dental issues, Lack of dental care, steady filling grievances and Submitting sick call slips and complained prison staff about his dental issues. the Defendant Chapman-Appellee delayed plaintiff-Appellant dental care treatment for each cavity to be filled and denied plaintiff-Appellant medication due to plaintiff-Appellant filling grievances submitting sick call slips and complaining to prison staff about his dental issues seeked help.

(2.) The plaintiff-Appellate has filed this appeal asking that the court of appeals determine whether or not if the District court magistrate Judge erred finding that defendant chapman didn't violate plaintiff-Appellant first and eighth Amendment constitutional rights by making plaintiff wait to receive dental care due to the grievances plaintiff-Appellant had filed. did the District court error finding that the plaintiff-Appellant didn't have to name the Defendant in grievances in order for the grievances to be exhausted where causal connection could had been shown in caused. Whether Defendant chapman conduct plaintiff-Appellant mentioned in paragraph #1 above violated the plaintiff first and eighth Amendment constitutional rights. plaintiff-Appellant is asking the seventh circuit court of appeals to also determine whether or not if the District court erred finding that since the plaintiff-Appellant had to wait to get his tooth extracted at another facility that didn't show that plaintiff-Appellant dental issues was never serious during the relevant time period plaintiff-Appellant seeked dental care from the Defendant chapman - Appellee

# Summary of the Argument

The District court erred in overlooking the evidence plaintiff-Appellant presented to the District court where the plaintiff showed the court that he filed grievances and grievances against the Defendant that caused the Defendant to retaliate against the plaintiff-Appellant, and overlooked at the evidence the plaintiff had presented showing that the plaintiff had dental issues the Need of Emergent dental care and made every attempt to get dental care through the Defendant, dental issues that the Defendant-Appelled refused to address by denying and delaying Dental care to the plaintiff-Appellant the plaintiff-Appellant presented evidence to the District court that the District court overlooked evidence that showed the Defendant at all times could had, but refused to provide plaintiff-Appellant with dental care and medication.

-4-

Standard Of Review

(1.) The District court erred finding that the defendant Chapman didn't violate the plaintiff-Appellant First and Eighth Amendments by making the plaintiff-Appellant wait months to get fillings in each cavity, due to plaintiff-Appellant filing grievances, constantly submitting sick call slips to dental staff, complained repeatedly to prison staff about his dental issues and need for emergent dental care.

(2.) The District court erred in finding that the plaintiff-Appellant didn't have to name the defendant-Appellee Chapman in his grievances to been exhausted, addressed to the defendant-Appellee

(3.) The Defendant-Appellee Chapman made the plaintiff-Appellant wait months for each cavity to be filled and denied the plaintiff-Appellant antibiotics and other medications for filing grievances, constantly submitting sick call slips to dental staff, and complained to prison staff about plaintiff-Appellant dental conditions need for dental care violated the plaintiff-Appellant First and Eighth Amendment Constitutional rights

(4.) The District court erred denying plaintiff-Appellant Motion for reconsideration

(5.) The District court erred finding that since another facility dental Department extracted the plaintiff decayed infected tooth that wasn't evidence that the plaintiff-Appellant dental conditions were serious and needed emergent need for dental care during the time the defendant-Appellee had interactions with plaintiff

(6.) The District court erred granting the defendant dispositive motion

# Argument

(1.) during the relevant time period stated in the plaintiff-appellant complaint that went before the district court the plaintiff-appellant had serious dental issues that caused for emergent need for dental care the plaintiff-appellant presented evidence before the District Court that he had dental issues that the defendant knew about attempted to get his dental issues addressed through the Defendant Chapman-Appellee by speaking to the defendant in person through other prison staff, by submitting sick call slips and through grievances that was addressed to the Defendant

(2.) the Defendant Chapman-Appellee delayed and denied the plaintiff dental care fillings and Antibiotics, pain medication out of retaliation. the defendant told the plaintiff each time he denied plaintiff-appellant dental care and necessities that he was not gonna document the conditions of plaintiff dental issues (bleeding, swelling pus filled gums toothaches) in the dental records the District Court was made aware of this from review of the plaintiff responses to the defendant dispositive motion and from review of the deposition transcripts that was attached to the defendant dispositive motion. the District Court erred in finding that since the dental records authored by the Defendant stated plaintiff-appellant had No dental issues that was emergent the plaintiff-appellant had No Need for emergent dental care the District court knew the Dental Records was the Defendant-Appellee own self-written Reports

(3.) the Defendant Chapman-Appellee delayed, denied plaintiff dental care fillings in cavities and Antibiotics, pain medications due to the plaintiff-appellant filing grievances and filing them against the Defendant. the District court was aware that there was two defendants in this case defendants Chapman, Rueter knew that the defendant Rueter filed a dispositive motion on the issue of exhaustion stating that the plaintiff-appellant didn't name her in grievances that was exhausted the District court knew that defendant-appellee Chapman didn't raise any exhaustion issues which told the District court that plaintiff had exhausted his administrative remedies as to Defendant Chapman. However the District

court erred ~~finding that~~ ~~the complaint~~ NO chain connection with the 5 plaintiff grievances against the defendant and the defendant and that the plaintiff didn't have to name the defendant in the grievance in order for the plaintiff to had exhausted against Defendant Chapman - Appellee. MADDOX V. LOVE, 665, F.3d 709, 722 (7th Cir. 2011) turley v. Rednour 729, F.3d 645, 650 (7th Cir. 2013) proves that the District court erred Also 20 Ill. Admin code 504.810(c.) requires, states that a prisoner must state the name of the person who is the subject of the complaint and if the prisoner does not know the name they must describe such person with as much detail as possible within the body of the grievance term. The District court was aware of this the District court was aware that if NO exhaustion issue was raised by the Defendant-Appellee there was grievances that named and was addressed to the defendant that caused him to retaliate against the plaintiff - Appellant. ~~plaintiff-Appellant~~ also presented evidence of grievances being filed that the Defendant had knew about, prior to the dental care restrictions within I.D.O.C

(4) The District court reviewed the deposition transcripts ~~that was~~ attached to the Defendant-Appellee Chapman dispositive motion. reviewed pages # 97-101 where plaintiff testified that the Defendant Chapman denied and delayed the plaintiff-Appellant dental care and meddation necessities for both plaintiff-Appellant filling grievances and filling grievances against the Defendant Chapman making him look bad. the District court erred in finding that the Defendant wouldn't had retaliated against plaintiff if grievances didn't name him. the defendant retaliated against plaintiff for filling grievances about his dental issues and making complaints. about ~~the plaintiff~~ Appellant dental issues.

(5) The Defendant Chapman told the plaintiff in November 2019 that prior to the defendant seeing the plaintiff-Appellant the Defendant had been made aware of the plaintiff needs for dental care but didn't respond for months due to the plaintiff Appellant filling grievances that caused E-mails to be sent to the Defendant and due to plaintiff-Appellant complaining about his dental issues was gonna fill 1 cavity and was still gonna make the plaintiff-Appellant wait to get the other cavity filled. the District court erred finding that since the Defendant Chapman filled 1 cavity he never retaliated against the plaintiff by waiting months to fill the first cavity and made the plaintiff-Appellant wait more months for the next fillings. the Defendant Appellee told the plaintiff in october 2019 that he was not getting

his cavities filled because they goant be provided with pain medications, antibiotics. the District court erred finding that since the Defendant-Appellee ordered the plaintiff an x-ray and mouthguard at the directions of the defendant high superiors the defendant-Appellee Never retaliated against the plaintiff denying and delaying the plaintiff-Appellant Dental care. the plaintiff-Appellant was not prescribed the mouthguard to fill his cavity nor to Alleviate the toothaches and there was no evidence presented to the District showing that a mouthguard could Alleviate toothaches pains, and fill cavities the District court erred finding that the defendant Chapman had prescribed plaintiff-Appellant the mouthguard to Alleviate his pains, toothaches

(6) there was no evidence presented to the District court by the Defendant-Appellee Chapman showing that the plaintiff-Appellant didnt have the Need for emergent Need for dental care other than the defendant own self written fabricated reports that the District court should had common sense to know the Defendant-Appellee would had fabricated the plaintiff-Appellant Dental records stating plaintiff didnt have dental Issues. after the Defendant-Appellee denied and delayed the plaintiff dental care. the District court erred finding that the plaintiff Dental conditions Bleeding swellin, pus filled gums Inability to chew food toothaches wasnt serious medical conditions this court could review cases that proves the District court and the Defendant-Appellee erred see Arnett v. Webster, 658 F.3d 742, 750 (7th cir. 2011), Greeno v. Daley 414 F.3d 645, 652-653 (7th cir. 2005) langston v. peters, 100 F.3d 1235, 1240, Thomas v. Walton 461 F. Supp 2d 786, 793 (S.D. Ill. 2006), Sellers v. Henman 41 F.3d 1100, 1102 (7th cir. 1994), Farmer v. Brennan 511 U.S. 825 (1994), Johnson v. Snyder, 444 F.3d 579, 584-585 (7th cir. 2006) gutierrez v. peters 111 F.3d 1364, 1373 (7th cir. 1997), Gomez v. Randle, 680 F.3d 859, 864 (7th cir. 2012) walker v. thompson, 288 F.3d 1005, 1008-09 (7th cir. 2002), zimmeenan v. tribble, 226 F.3d 568, 573 (7th cir. 2000), Rasho v. Eiyea, 856 F.3d 469, 475 (7th cir. 2017) Bridges v. Gilbert 557 F.3d 541, 553 (7th cir. 2009), King v. Kramer, 680 F.3d 1013 (7th cir. 2012) Hill v. Tangherlin 724 F.3d 965, 968 n.1 (7th cir. 2013), cooper v. casey 97 F.3d 914, 916 (7th cir. 1996) Ralston v. McGovren 167 F.3d 1160, 1161-62 (7th cir. 1999), Hudson v. McHugh, 148 F.3d 859, 863 (7th cir 1998) gutierrez, 111 F.3d at 1373   these cases proves that the plaintiff Appellant Dental conditions were serious and worst then the plaintiffs in those cases also Although this court Is a physician this court knews like the District court knew that the plaintiff-Appellant toothaches, swellin, Bleedin pus filled gums were serious medical Issues. the District court erred finding that the plaintiff-Appellant had no need for emergent dental care after testifying at a evidentiary Hearing after the filing of the plaintiff complaint. the plaintiff Informed the district court during the hearing that other prisoners were

Prevailly the plaintiff-appellant with each medication of state was evidence that the defendant-appellant conduct didn't occur and plaintiff-appellant dental conditions wasn't serious. The plaintiff-appellant presented evidence to the District court that the District court overlooked the District court was made aware even from the defendant that the defendant had received 1 of plaintiff-appellant grievances and found that there was NO CAUSAL connection the evidence plaintiff presented showed the defendant knew about the plaintiff grievances he was worthy and stated that was 1 of the reasons of why the plaintiff treatment for dental care was being delayed. Also Petties v. Carter, 836 F.3d 722,730 (7th Cir. 2016) geleveson v. Anderson, 533 F.3d 763,779 (7th Cir. 2008) Edwards v. Snyder 478 F.3d 827,830 (7th Cir. 2001) proves that plaintiff-appellant Dental conditions were serious medical needs Williams v. Liefer, 491 F.3d 710, 716 (7th Cir. 2007). The District court erred finding that the Defendant Chapman Appellee conduct of waiting to fill the first cavity didn't amount to a violation of the plaintiff-appellant constitutional rights the defendant told plaintiff as stated in the plaintiff complaint that went before the District court that he waited to see plaintiff-appellant for months to fill the first cavity since plaintiff filed grievances and a E-mail about plaintiff dental issues (Bleeding, swollen pus filled gums toothaches) were sent to the defendant. Miller v. Campanella 794 F.3d 878 (7th Cir. 2015) proves that the District court erred finding that the Defendant-Appellee didn't violate plaintiff-appellant rights also see Rodriguez v. Plymouth Ambulance serv 577 F.3d 816,832 (7th Cir. 2009) that proves the District court erred also Gill v. Reed 381 F.3d 649,662 (7th Cir. 2004) Wynn v. Southward 251 F.3d 588,594 (7th Cir. 2001) Ralston 167 F.3d 41,1162. plaintiff-appellant presented evidence to the District court showing that the Defendant-Appellee knew about his grievances before the restrictions. plaintiff dental care before covid-19 on dental care within I-DOC and showed that he had been denying

(7.) each time the plaintiff-appellant saw the Defendant-Appellee it was due to grievances the plaintiff-appellant had written and due to other person officials referring the plaintiff to the defendant. The District court was aware of that and erred finding that just because the Defendant was following up with seeing the plaintiff-appellant he was attempting to alleviate plaintiff dental issues and or couldn't alleviate the plaintiff dental issues due to covid-19 restrictions on dental care that the District court knew that wasn't at all times in effect during the entire time period in this case. The District court overlooked the evidence that this court should review where plaintiff presented evidence that the only reason why the defendant Chapman was seeing the plaintiff was because he was obligated due to grievances plaintiff-appellee the Defendant had to have proof he seen plaintiff-appellant in person which is why plaintiff-appellant

-9-

had to appear <del>case 22 defendant-appellee Chapman. Docket Sheet Pages</del> though he refused to provide the plaintiff-appellant with dental care each time then falsified the plaintiff-appellant dental records stating the plaintiff-appellant had no dental issues that needed for emergent dental care from the defendant-appellee Chapman

(B) the plaintiff-appellant presented evidence to the District court, that the District court overlooked that supported the plaintiff retaliation claim against the defendant-appellee the District court erred finding that there was no evidence of a causal connection with the plaintiff grievances and the defendant the plaintiff presented evidence that the District court overlooked evidence that grievances were being filed and filed against the defendant-appellee. the defendant-appellee didn't just state he was not providing and delayed plaintiff-appellant treatment for dental care due to grievances the plaintiff filed against him. the defendant stated that plaintiff-appellant dental issues would not been addressed and would been delayed. since the plaintiff-appellant filed grievances and filed grievances against the defendant. the defendant Chapman admitted to receiving grievances that plaintiff-appellant had written. the defendant-appellee also didn't claim any failure to exhaust administrative remedies claims against the plaintiff-appellant ~~which~~ like the defendant-appellee co-defendant Rueter did. this told the District court that the plaintiff infact did file grievances against the defendant-appellee that named defendant Chapman that would been addressed to the defendant-appellee where the defendant would had been put on notice, like he was that the plaintiff had written grievances against the defendant, which caused the defendant to deny and delay plaintiff needs for dental care. the district court erred in it's ruling on the plaintiff retaliation claim when the plaintiff presented evidence of a causal connection with plaintiff-appellant grievances and the defendant where this court should therefore reverse the District court judgment on the defendant dispositive motion. since the District court overlooked the evidence presented by the plaintiff, found that plaintiff-appellant grievances didn't have to name the defendant where it would been a causal connection with the defendant and plaintiff-appellant grievances, where Maddox v. Love 665; F.3d 709, 722 (7th cir. 2011) turley v. Rednour 729, F.3d 645, 650 (7th cir. 2013), 20 Ill. Admin code 504.810 (c) proved the District court erred like this court knows. Also this court should know that the District court in that case were familiar with grievance forms written

Case: 22-1840   Document: 10   Filed: 09/09/2022   Pages: 56

by prisoners against prison staff, had to Name the prison staff member because that some Magistrate Judge's/son In this case Hoskins v. Chapman, Rueter 20-cv-00508-GCS granted the Defendant Hess dispositive motion on the Issue of exhaustion finding that the plaintiff had, but didnt Name defendant Hess in a grievance form In Hoskins v. Johnson et al. 19-cv-1303-GCS and this same Judge found that since the plaintiff In this appeal didnt Name defendant Hess In a grievance form In the underlined case, the grievance facility could not address the grievance to Hess. This tells this court that the District court overlooked the evidence plaintiff presented to show that there was a causal connection with the plaintiff grievances and the defendant and found In the favor of the Defendant-Appellee stating that plaintiff grievances didnt have to Name the defendant In order to be exhausted. This evidence proves that the District court was aware that plaintiff-Appellant had did Name the Defendant-Appellant Chapman In grievances where that was evidence of a causal connection between the plaintiff grievances and the defendant because the District court was aware that Defendant Chapman Appellee didnt, but his co-defendant JANA Rueter Raised an exhaustion Issue arguing plaintiff-Appellant had not Named her In his grievances, this court should therefore Reverse the District court Judgment on the Defendant-Appellee dispositive motion

(9). there was no evidence presented by the Defendant-Appellee as the District court knew that showed that there was restrictions on Dental care being provided to prisoners Housed within I.D.O.C. facilities the plaintiff-Appellant infact received an extraction of his lower left tooth on 5/7/2021 while being Housed at a I.D.O.C. prison facility that the District court was aware of. the District court erred In finding that the defendant Chapman conduct of delaying plaintiff-Appellant treatment for dental care was Just and not Justified out of retaliation of plaintiff grievity the Defendant because there was NO causal connection with the plaintiff grievances and the defendant. which the District court again erred because the Defendant-Appellee did not present Any evidence to the District court proving that NON of plaintiff grievances Named the defendant. grievances prisoners file against prison staff within the I.D.O.C. has to Name staff In order to put the facility and the staff member on Notice of the plaintiff-Appellee (prisoner) complaint SEE Maddox v. Love 665, F.3d 709, 722, (7th.Cir. 2011) turley v. Rednour 729, F.3d 645, 650 (7th Cir. 2013) 20 Ill. Admin Code 504.810

-14-

(C.) Here In this case the Defendant-Appellee didn't file any dispositive motions on the issue of exhaustion in this case. Arguably that the plaintiff-Appellee complaint should been dismissed for failure to exhaust like the Defendant-Appellee co-defendant In this case did as the District court knew. The Defendant-Appellee Also denied the plaintiff dental care and denied plaintiff-Appellant medications for filing grievances period. The District court was aware that the Defendant-Appellee as he admitted had received grievances written by the plaintiff-Appellant. there was no evidence other than the defendants own self serving statements of how many patients he (Defendant-Appellee) had to see that denied plaintiff-Appellant dental care and the District court knew this and erred finally In the favor of the Defendant-Appellee. where this court should therefore Reverse the Judgment of the District court

(10.) The plaintiff-Appellant filed a motion for reconsideration of the District court Judgment on the Defendant motion for summary Judgment In which the District court erred In deny by the motion. The District court erred In it's finding that the Defendant-Appellee chipman wasn't aware nor could have had the opportunity to respond to the plaintiff-Appellant argument regarding the supplemental grievances. The District court was wrong because the Defendant-Appellee through his counsel, admitted In their responses to the plaintiff-Appellant motion for reconsideration that the grievances the plaintiff-Appellant referred to was with discovery and argued In the plaintiff-Appellant Responses to the Defendant-Appellee dispositive motion. also those grievances were apart of the record the Defendant-Appellee had received, prior to the filing of the Defendant-Appellee dispositive motion and would had received them. prior to the filing of the Defendant-Appellee dispositive motion. This court should find that the District court erred in believing that the plaintiff-Appellant had deprived the Defendant-Appellee an opportunity to respond to the grievances that the District court found to be submitted at the last minute. The District court was at all times aware that the Defendant-Appellee chipman didn't file a dispositive motion on the issue of exhaustion against the plaintiff like the Defendant-Appellee co-defendant Rueter, which therefore told the District court that

-12-

the defendant-appellee Chapman knew about and Exhaust grievances plaintiff-appellant had named the defendant-appellee in his (plaintiff-appellant) grievances that were exhausted. because if the plaintiff-appellant didn't name the defendant-appellee chapman in grievances that were exhausted the defendant-appellee chapman would had filed a dispositive motion challenging the issue of exhaustion against the plaintiff-appellant like the defendant-appellee Chapman co-defendant JANA Rueter did and the plaintiff-appellant complaint would been dismissed for failure to exhaust Administrative Remedies the District court was wrong and Erred and this court should therefore find that per this District Ruling in maddox V. Love 665 F.3d 709, 722 (7th cir. 2011), turley V. Rednour, 729 F.3d 645, 650 (7th cir. 2013) and 20 Ill. Admin code 504. 810 (L.) the District court Erred and was wrong where this seventh circuit court should therefore reverse the district court judgment in case Hoskins V. Chapman, Rueter 20-cv-00508-GcS. Remand the case back to the District court for the case to proceed to a trial or settlement conference

(11.) the District court erred finding that the march 2020 grievance was the only grievance that the Defendant-appellee knew about the plaintiff had presented evidence to the District court showing that the defendant-appellee admitted in November 2019 prior to the covid-19 restrictions on dental care that the defendant knew about plaintiff-appellant filing grievances about dental care was gonna continue to delay the plaintiff-appellant dental care past that November 2019 month. the District court over looked the evidence that plaintiff presented showing that the march 2020 grievance wasn't the only grievance plaintiff-appellant had filed. before the covid-19 restrictions on dental care plaintiff filed other grievances that was addressed to the defendant that initiated the defendant Retaliatory conduct

## Conclusion

Wherefore for the reasons stated in the plaintiff-Appellant Brief the plaintiff Ask that this Honorable court Reverse the District court decision on the defendants dispositive motion, Remand the case back to the District court to proceed to trial or a settlement conference

*Certification*

That the type-volume limitation of circuit Rule 32(c) has been complied.

# Appendix

(1.) Attached to this Appendix In support of the plaintiff-Appellant Brief Is the District Court Order/ Judgment entered on 2/24/2022 on the Defendants dispositive motion

(2.) Attached to this Appendix, In support of plaintiff-Appellant Brief Is the District court Order on the plaintiff-Appellant motion for Reconsideration, order entered on 4/21/2022

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA LEE HOSKINS,                    )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )
                                       )        Case No. 3:20-cv-00508-GCS
NATHAN CHAPMAN,                        )
                                       )
            Defendant.                 )

MEMORANDUM & ORDER

SISON, Magistrate Judge:

Plaintiff Joshua L. Hoskins is currently in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Dixon Correctional Center. (Doc. 106, p. 2). Hoskins proceeds *pro se*. On June 1, 2020, Hoskins filed suit against Defendant Chapman pursuant to 42 U.S.C. § 1983 for claims arising from his medical care while incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1). In his complaint, Hoskins alleges that Defendant Chapman, a dentist, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when he failed to timely fill one of Hoskins's cavities. (Doc. 48, p. 1-2). Hoskins also claims that Defendant delayed filling his cavity in retaliation for Hoskins filing grievances about Defendant's medical care. *Id.* Now before the Court is Defendant's motion for summary judgment. (Doc. 105). For the reasons delineated below, the motion for summary judgment is **GRANTED.**

### FACTUAL ALLEGATIONS

Hoskins first reported developing cavities while he was incarcerated at Stateville Correctional Center ("Stateville"). (Doc. 106, p. 2). Though the Stateville dentist was able to fill one of Hoskins's cavities, he was not able to fill a cavity on tooth thirteen before Hoskins was transferred to Pinckneyville on June 5, 2019. *Id.* Hoskins did not complain to healthcare staff of pain in his teeth or other dental issues until September 2019. *Id.* at p. 3.

On September 27, 2019, Hoskins made a nurse sick call for medical treatment after he was struck in the jaw. (Doc. 106, p. 3). Hoskins saw Defendant Chapman on referral for treatment to his jaw on October 3, 2019. *Id.* During the visit, Defendant Chapman noted that Hoskins was able to talk normally. *Id.* Hoskins also did not appear to be in distress and did not grimace when physically examined. *Id.* Nevertheless, Defendant Chapman ordered an x-ray of Hoskins's jaw and provided him with a mouth guard. *Id.* The x-ray did not reveal any fractures or dislocations to Hoskins's jaw; however, Defendant Chapman scheduled Hoskins for a filling for tooth thirteen on October 22, 2019. *Id.*

On November 12, 2019, Defendant Chapman provided a filling for Hoskins's tooth thirteen. (Doc. 106, p. 4). At that time, Defendant found that Hoskins also had a cavity in tooth nineteen. *Id.* However, this cavity was visible only on an x-ray. *Id.* Hoskins did not report pain in connection with the cavity, so Defendant did not find an emergent need to fill the tooth. *Id.* Instead, Defendant placed Hoskins on a waiting list for a filling and

advised him to use floss to clean his teeth. *Id.* During November 2019, Defendant saw

approximately 278 patients for dental services. *Id.*

On June 24, 2019, Hoskins filed a grievance stating that he had dental pain, but

security staff intercepted his requests to see the medical unit. (Doc. 106, p. 16). Hoskins

again filed a grievance on July 30, 2019, stating that he had dental pain because he was

not allowed toothbrushes and toothpaste by security staff. *Id.* On August 19, 2019,

Hoskins filed a grievance again alleging that security staff would not provide a

toothbrush or toothpaste. *Id.* at p. 17. He filed additional grievances requesting dental

care on February 24 and March 16, 2020. *Id.* at p. 17 n.5.

On March 20, 2020, the dental unit received a copy of one of Hoskins's grievances

regarding his dental care. (Doc. 106, p. 4). Defendant Chapman noted that he received no

contact from Hoskins since his November 12, 2019 appointment and that Hoskins made

no nurse sick calls about his dental complaints. *Id.* However, Defendant still scheduled

Hoskins for a dentist appointment shortly thereafter. *Id.*

Hoskins next saw Defendant for a dentist appointment on March 31, 2020. (Doc.

106, p. 5). When Defendant examined Hoskins, he found no swelling, bleeding, pus or

other signs of infection in his gums. *Id.* Hoskins did have a small incisal chip on tooth

twenty-two; however, Defendant was unable to repair the chip because the IDOC had

prohibited non-emergent dental interventions as a COVID-19 precautionary measure. *Id.*

Defendant was also unable to provide a filling for tooth nineteen, as the cavity on this

tooth was deemed non-emergent. *Id.*

Hoskins did not report pain or distress during his March 31, 2020 appointment with Defendant, nor did there appear to be damage to the nerve root of tooth nineteen which would have caused such pain. (Doc. 106, p. 5). After Hoskins was transferred to Dixon Correctional Center in 2021, he saw a new dentist. *Id.* at p. 6. However, Hoskins did not request pain medication for his yet un-filled cavity. *Id.* The IDOC maintained the restrictions on non-emergent dentistry through May 2021. *Id.* Hoskins had not received a filling for his tooth as of his May 3, 2021 deposition. *Id.*

LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While

the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

Case: 22-1847   Document: 30   Filed: 09/08/2022   Pages: 56

ANALYSIS

I.    **Whether Defendant Chapman was Deliberately Indifferent to Hoskins's Serious Medical Needs**

a.    **Whether Hoskins's Tooth Pain Constitutes an Objectively Serious Medical Need**

A prisoner seeking to establish that the medical care he received in prison was so insufficient as to violate his Eighth Amendment rights must prove that: (1) he had an objectively serious medical need, and (2) the defendant prison official was deliberately indifferent to that need. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). *See also Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Thomas v. Walton*, 461 F.Supp.2d 786, 793 (S.D. Ill. 2006). In order to find that a defendant was deliberately indifferent, there must be a condition that required treatment, knowledge on the part of the health care provider of an excessive risk to health or safety, and a decision to disregard that risk. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994)(citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). Defendants first assert that Hoskins's right tooth pain is not a serious medical need for the purposes of an Eighth Amendment claim for deliberate indifference, thus challenging the first prong of the test. (Doc. 91, p. 8). Because the Court finds that Hoskins's tooth pain and cavity do not constitute an objectively serious medical need, the motion for summary judgement is granted.

A medical condition is objectively serious if a physician has determined that treatment is mandated, or if it is "so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Johnson v. Snyder*, 444 F.3d 579, 584-585 (7th Cir. 2006)(citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)), overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965, 968 n.1 (7th Cir. 2013). An objectively serious condition results if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain[.]" *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Not all medical conditions are sufficiently serious to implicate the Eighth Amendment; the failure to dispense medicine for "minor aches and pains" does not violate the Constitution. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). For example, in *Knox v. Walter*, the plaintiff alleged that he sustained injuries during a shakedown of his cell house, including cuts to his wrist, pain and swelling in his neck and shoulders, and feelings of lightheadedness. No. 20-3344, 2022 WL 61432, at *1 (7th Cir. Jan. 6, 2022). However, when the defendant nurse saw the plaintiff, she found no swelling, weakness, or numbness. *Id.* The district court found that the plaintiff's superficial cuts and dizziness were not objectively serious, though his claims of severe pain left a question of material fact for the jury. *See Knox v. Butler*, Case No. 17-cv-494-SMY, 2020 WL 6701148, at *2 (S.D. Ill. Nov. 13, 2020). The Seventh Circuit upheld this finding on appeal. *Walter*, 2022 WL 61432, at *1.

In contrast, withholding pain medication from a patient with cancer, ignoring unmedicated epilepsy, and leaving untreated an infected cyst which caused excruciating pain have each been considered sufficiently serious to support a claim for deliberate indifference. *See Ralston v. McGovern*, 167 F.3d 1160, 1161-62 (7th Cir. 1999); *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998); *Gutierrez*, 111 F.3d at 1373. Chronic pain can

also constitute an objectively serious medical condition when a reasonable doctor or patient would find that pain important and worthy of treatment, or when it interferes with the plaintiff's daily activities. *See Gutierrez,* 111 F.3d at 1373 (internal citations omitted). A plaintiff's own reports of terrible pain may create a genuine question as to whether a condition was objectively serious. *Wilson v. Wexford Health Sources, Inc.,* 932 F.3d 513, 521 (7th Cir. 2019).

Hoskins's complaints of pain from his cavity on tooth nineteen are more similar to the minor aches and pains in *Cooper* than the chronic pain considered in *Gutierrez.* After a hearing on Hoskins's motion for a preliminary injunction to require emergency dental care, the Court noted that Hoskins showed no signs of debilitating pain. (Doc. 48, p. 7). To the contrary, Hoskins testified that his only symptom was minor bleeding by tooth nineteen. *Id.* Furthermore, when Defendant examined Hoskins during the October 3, 2019 visit, Defendant noted that Hoskins did not grimace when his jaw was physically examined. (Doc. 106, p. 10). Defendant again noted that Hoskins had no pain in connection with tooth nineteen during the November 12, 2019 visit. *Id.* Hoskins had no swelling in his jaw or around tooth nineteen and did not have blood or pus in his mouth at that time. *Id.* at p. 10-11. When Defendant examined Hoskins on March 31, 2020, Defendant again found no swelling, bleeding, pus, or other signs of infection in Hoskins's gums or around tooth nineteen. *Id.* at p. 10. Finally, even after Hoskins was transferred to Dixon and saw a different dentist, Hoskins did not request pain medication from that dentist. *Id.* at p. 11. This lack of action demonstrates that Hoskins did not face substantial

pain from his cavity in tooth nineteen, thus indicating that this was not an objectively serious medical need.

Hoskins makes three arguments in support of finding that his pain constitutes an objectively serious medical need. First, Hoskins responds that he complained to other health staff about his dental pain, but that staff did not note his pain in the medical records. (Doc. 121, p. 1). A February 3, 2021 memorandum from Defendant to Hoskins's grievance counselor does inform Hoskins that he may purchase sensitive toothpaste from the commissary and that Defendant issued Hoskins a prescription for 500 milligrams of Tylenol for seven days. (Doc. 121, Exh. N, p. 19). However, while this evidence does support finding that Hoskins complained of pain, it does not show that Hoskins's pain was so severe as to constitute an objectively serious medical need. Even if Hoskins experienced some pain from his cavity on tooth nineteen, Hoskins's sporadic requests for pain medication indicate that the pain amounts to minor aches, rather than severe or chronic pain. Hoskins himself testified that he experienced only minor bleeding, and there is no evidence that his pain prevented him from eating or otherwise interfered in his daily life.

Second, Hoskins states in his deposition that he was not able to chew using the side of his mouth on which he had a cavity. However, when asked what he could not eat, Hoskins said that the foods aggravating his cavity were ice chips, Jolly Rancher hard candy, and hard cereals. (Doc. 106, Exh. A, 156:10-23). This minor limitation does not sufficiently interfere in Hoskins's daily activities to constitute a severe medical condition.

Lastly, Hoskins also explains that his pain could be so debilitating that it would prevent him from being able to do push-ups or from lifting boxes, interfering in his daily exercise. (Doc. 106, Exh. A, 158:20-24, 159:1-14). However, he also states that he is "not saying [he is] so weak that [he] can't pick up something." *Id.* at 159:19-22. Although Hoskins states that exercise would aggravate his cavity, he also points out that this aggravation was not so severe as to prevent him from being able to conduct his daily activities. Accordingly, Hoskins's cavity does not constitute an objectively serious medical need, and the motion for summary judgement is granted on Count I.

> ### b.    Whether Defendant Chapman was Deliberately Indifferent to Hoskins's Serious Medical Needs

Assuming, *arguendo*, that Hoskins's cavity and tooth pain constitute an objectively serious medical need, the Court next turns to consider the second prong, *i.e.*, whether the defendant prison official was deliberately indifferent to a serious medical need. *See Arnett,* 658 F.3d at 750. In order to be deliberately indifferent to an objectively serious medical need, a defendant must know of and disregard an excessive risk to the plaintiff's health. *See Greeno,* 414 F.3d at 653. The defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837-838 (1994). Moreover, "[d]eliberate indifference implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." *Thomas,* 461 F. Supp. 2d at 793 (citing *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir. 1985), abrogated on other grounds

by *Haley v. Gross*, 86 F.3d 630, 645 n.34 (7th Cir. 1996)). Deliberate indifference is more than negligence; instead, the proper standard "approaches intentional wrongdoing." *Johnson*, 444 F.3d at 585. *See also Rosario v. Brown*, 670 F.3d 816, 821-822 (7th Cir. 2012)(requiring a plaintiff show defendants had near "total unconcern" for the plaintiff's welfare). Accordingly, the failure to alleviate a risk officials should have perceived, but did not, is not a violation of the Eighth Amendment. *See Farmer*, 511 U.S. at 826.

Delays in treating painful medical conditions may support a claim under the Eighth Amendment even when the underlying condition for which treatment is sought is not life-threatening. *See Gutierrez*, 111 F.3d at 1374. An inexplicable delay in treatment which serves no penological interest may support an inference that prison officials were deliberately indifferent to an inmate's serious medical needs. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)(citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)). *See also Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007)(holding that defendants were deliberately indifferent when they denied the plaintiff treatment for his dislocated finger for two days). When determining whether a delay indicates deliberate indifference, courts consider the seriousness of the condition for which treatment is delayed and the ease of providing treatment for that condition. *Id.* Furthermore, in order to predicate an Eighth Amendment claim on a delay in treatment, a plaintiff must show that the delay exacerbated the injury or unnecessarily prolonged pain. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007).

A significant delay in treatment clearly supports finding deliberate indifference when the materials for treatment are widely available and easily obtainable. *See, e.g.*,

*Miller v. Campanella*, <u>794 F.3d 878, 880</u> (7th Cir. 2015)(finding that the defendants' delay in providing the plaintiff with over-the-counter pills to treat gastro-esophageal reflux disease for two months demonstrated deliberate indifference). Even a short delay may be indicative of deliberate indifference when an inmate's condition causes considerable pain. *See Rodriguez v. Plymouth Ambulance Serv.*, <u>577 F.3d 816, 832</u> (7th Cir. 2009). For example, in *Rodriguez*, prison staff incorrectly administered an intravenous line in the plaintiff's arm. *Id.* at 819-820. During the plaintiff's four-day hospital stay, staff treated plaintiff's resulting pain by pushing the intravenous line further into the plaintiff's arm and providing him with an ice pack. *Id.* at 832. As a result of the delay in treatment, the plaintiff developed a serious and contagious infection. *Id.* The Seventh Circuit found that, given the alleged facts, the plaintiff sufficiently stated a claim under the Eighth Amendment to survive a motion to dismiss. *Id.* In contrast, a similar delay for a less painful condition may be tolerated under the Eighth Amendment. *See, e.g., Gutierrez*, <u>111 F.3d at 1374</u> (finding that the plaintiff could not survive summary judgment when officials delayed treating a mild cyst infection for six days).

Courts recognize that "delays are common in a prison setting with limited resources[.]" *Petties*, <u>836 F.3d at 730</u>. Prison officials, however, must provide treatment sufficient to meet the "civilized minimum of public concern for the health of prisoners." *Ralston*, <u>167 F.3d at 1162</u>. This civilized minimum is "a function of both objective need and of cost." *Id.* When the cost of providing treatment is low, the failure to do so is especially indicative of deliberate indifference. *See Id.* For instance, in *Gil v. Reed*, the defendant denied the plaintiff his pain medication, although that medication had been

prescribed and dispensed before the plaintiff requested it. 381 F.3d 649, 662 (7th Cir. 2004). The prescribed antibiotic was necessary to treat a severe infection; though the plaintiff obtained the medication the following day, the Seventh Circuit found the delay demonstrated deliberate indifference. *Id.* Similarly, in *Wynn v. Southward*, the plaintiff repeatedly informed prison officials that he needed his heart medication "immediately" in order address a heart flutter and substantial chest pains. 251 F.3d 588, 594 (7th Cir. 2001). Citing to *Ralston*, 167 F.3d at 1162, the Seventh Circuit noted that the defendants' delay in providing the plaintiff's necessary heart medication supported a claim for deliberate indifference under the Eighth Amendment. *Id.*

Hoskins alleges that Defendant Chapman was deliberately indifferent to his cavity and tooth pain because Defendant Chapman failed to timely treat Hoskins's cavity with a filling between September 27, 2019, when Hoskins first complained of his cavity, and when Hoskins received treatment for his cavity at Dixon in 2021. *See* (Doc. 121, p. 2). This lack of treatment apparently left Hoskins in substantial pain until dentistry professionals at Dixon filled his cavity. *Id.* Accordingly, Hoskins claims that Defendant Chapman's delay in treatment exacerbated his pain.

In response, Defendant Chapman points out that he regularly took action to alleviate Hoskins's complaints of tooth pain when he saw Hoskins for treatment. (Doc. 106, p. 12). For example, when Hoskins saw Defendant Chapman on October 3, 2019, Defendant Chapman ordered Hoskins a mouth guard to alleviate his pain and ordered an x-ray of his jaw. *Id.* On November 12, 2019, Defendant Chapman found that Hoskins had a cavity in tooth nineteen, but informed him that the cavity was only visible from the

x-ray, indicating that it would not cause significant pain. *Id.* Defendant Chapman then exercised his medical judgment to place Hoskins on the waiting list for a filling. *Id.* However, as the waiting list for dental treatment was full during November 2019, with Defendant Chapman seeing approximately fifteen to sixteen inmates per day for treatment, Defendant Chapman was not able to fill Hoskins's cavity immediately. *Id.* at p. 13, n.2. Defendant Chapman's ability to quickly treat Hoskins's cavity was further limited by the imposition of COVID-19 precautionary measures; when Defendant Chapman saw Hoskins in March 2020, he was not able to treat Hoskins's cavity per the safety regulations in place at the time because Hoskins did not appear to have symptoms severe enough to constitute an emergency. *Id.* at p. 12.

In order to succeed on a claim for deliberate indifference to a serious medical need against a physician, a plaintiff must show that the defendant-physician's decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Even evidence that at least some medical professionals would have chosen to pursue a different course of treatment is, standing alone, insufficient for a claim to survive summary judgment proceedings. *See Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). Because a physician's treatment decisions are necessarily predicated on each individual patient's symptoms and medical necessities, delineating between acceptable differences of opinion and deliberate indifference often escapes a bright line analysis. *See Petties*, 836 F.3d at 729. The few instances in which courts do approach a bright line analysis includes when a physician

ignores a specialist's recommendations, *see Arnett*, 658 F.3d at 753; when a physician fails to follow existing protocol, *see Petties*, 836 F.3d at 729 (citing *Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005)); and when a physician chooses an easier course of treatment even when that treatment is less effective than other available options. *See Walker v. Peters*, 233 F.3d 494, 498 (7th Cir. 2000). Inherent to each of these situations is the defendant physician's ability to make a decision impacting the plaintiff's medical treatment and care. *Cf. Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015)(acknowledging that showing "someone else was responsible" could support granting summary judgment after discovery); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)(upholding a decision granting summary judgment when the plaintiff failed to show that delay between the initial visit, diagnosis and specialist's treatment were within the defendant physician's control).

Hoskins can demonstrate neither that Defendant Chapman's delay in filling Hoskins's cavity constituted a substantial departure from accepted medical judgment nor that Defendant Chapman had the ability to make a different decision for Hoskins's medical treatment and care. Although dentists at Dixon may have provided Hoskins with a filling for his cavity, this treatment does not indicate that Defendant Chapman failed to exercise medical judgment when he found that Hoskins's tooth showed no sign of infection during his March 31, 2020 meeting with Hoskins. To the contrary, Defendant Chapman's diagnosis is consistent with Hoskins's own reports that he was not suffering pain at that time. Furthermore, there is no evidence that Defendant Chapman was responsible for the delay in Hoskins's treatment. Defendant Chapman was not able to

treat Hoskins because COVID-19 procedures at Pinckneyville prevented Defendant Chapman from providing non-emergent dental care; once Defendant Chapman determined that Hoskins's cavity did not constitute an emergency, he had no choice other than to delay Hoskins's medical treatment either until it presented an emergency or the regulations were lifted. As the delay in Hoskins's treatment was not Defendant Chapman's responsibility, the Court finds that Defendant Chapman was not deliberately indifferent to Hoskins's serious medical needs, and summary judgment is granted as to Count I on this ground as well.

## II.   Whether Defendant Chapman Retaliated Against Hoskins for Filing Grievances Against Him

In order to survive summary judgment on a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future;" and (3) a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citation omitted). In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation as well as the acts claimed to have constituted retaliation; this puts those charged with retaliation on notice of the claims. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In a First Amendment retaliation claim, a plaintiff must show that his protected activity was the reason the defendant took an action against him. *See Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) (internal quotations omitted). At the summary judgment stage, a plaintiff has the burden of producing evidence that his speech was at least a motivating factor for a

defendant's retaliatory action; the burden then shifts to the defendant to rebut any causal inference raised by the plaintiff's evidence. *See Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012).

The plaintiff's burden of proof is low; nevertheless, the plaintiff must show that the injury or adverse action against him would deter a person of ordinary resolve from exercising his or her right to free speech. *See Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982). Harassment or other retaliatory actions which are unlikely to deter a person of ordinary firmness from exercising his or her right to free speech are not actionable. *Id.* Prisoners have a First Amendment right to make grievances about their conditions of confinement. *See Watkins v. Kasper,* 599 F.3d 791, 798 (7th Cir. 2010). However, to state a claim for retaliation, a plaintiff's complaint must set forth a "chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000)(quoting *Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Hoskins's filing of grievances against Defendant Chapman is protected activity under the First Amendment, meeting the first prong of the retaliation test. However, Hoskins fails to satisfy the third prong of showing a causal connection. Hoskins claims that Defendant Chapman retaliated against him by declining to treat his cavity between June 2019 and March 2020. (Doc. 121, p. 4). The IDOC did not institute COVID-19 restrictions on dentistry in its correctional centers until March 2020. *Id.* Hoskins asserts that Defendant could have treated his tooth within that time frame had he not delayed medical care in retaliation for Hoskins's grievances. *Id.* However, based on Hoskins's chronology of events, an inference of retaliation cannot plausibly be drawn. In his

deposition, Hoskins testified that the only grievance that he could point to that was sent to the Dental Unit was a grievance that he wrote in August 2019. (Doc. 106-1, p. 134). However, Hoskins did not name Defendant Chapman nor was it directly addressed to Defendant Chapman. *Id.* Hoskins additionally testified that he was referred to Defendant Chapman by another doctor and saw Defendant Chapman on October 3, 2019. (Doc. 106-1, p. 107). Hoskins noted that he brought up his dental issues with Defendant Chapman at that time. *Id.* at p. 106. According to Hoskins, Defendant Chapman responded that he was not going to address his dental concerns and was going to make Hoskins wait for care because of all the grievances he had been filing. *Id.* at p. 109, 111. Nevertheless, Hoskins concedes that Defendant Chapman gave him a mouth guard on that date. *Id.* at p. 107-108. Hoskins further concedes that he received a filling for a tooth different from the one at issue on November 12, 2019. *Id.* at p. 111-112. This treatment indicates that Hoskins did not suffer a deprivation or other retaliatory injury as a result of him filing grievances.[1] As Hoskins continued to receive dental treatment despite the fact that he had apparently filed numerous grievances, the Court finds that a causal connection cannot be shown. Accordingly, summary judgment is granted with respect to Count II.

---

[1]     Defendant Chapman asserts that because Hoskins continued to file grievances regarding his dental care, an ordinary person would not be deterred from such conduct. (Doc. 106, p. 15). However, the standard under which the Court considers whether an ordinary person would be deterred from engaging in activity protected under the First Amendment is an objective one. *See Holleman v. Zatecky,* 951 F.3d 873, 880 (7th Cir. 2020). A specific plaintiff's persistence therefore does not undermine his claim. *See Douglas v. Reeves,* 964 F.3d 643, 646 (7th Cir. 2020). In any event, because the Court finds that Hoskins cannot show a causal connection, the Court does not need to address the second prong of the retaliation test.

CONCLUSION

For these reasons, the Court **GRANTS** Defendant's motion for summary judgment. (Doc. 105). The Court **DIRECTS** the Clerk of the Court to enter judgment in Defendant's favor with prejudice and to close the case.

**IT IS SO ORDERED.**

**DATED: February 24, 2022.**

Digitally signed by
Judge Sison 2
Date: 2022.02.24
12:19:47 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA LEE HOSKINS,               )
                                  )
              Plaintiff,           )
                                  )
vs.                               )
                                  )    Case No. 3:20-cv-00508-GCS
NATHAN CHAPMAN,                   )
                                  )
              Defendant.           )

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Joshua L. Hoskins is currently in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Dixon Correctional Center. (Doc. 106, p. 2). Hoskins proceeds *pro se*. On June 1, 2020, Hoskins filed suit against Defendant Chapman pursuant to 42 U.S.C. § 1983 for claims arising from his medical care while incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1). In his complaint, Hoskins alleges that Defendant Chapman, a dentist, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when he failed to timely fill one of Hoskins's cavities. (Doc. 48, p. 1-2). Hoskins also claims that Defendant delayed filling his cavity in retaliation for Hoskins filing grievances about Defendant's medical care. *Id.* On February 24, 2022, the Court granted summary judgment in favor of Defendant Chapman and against Hoskins, and Judgment reflecting the same was entered the next day. (Doc. 144, 145).

Now pending before the Court is Hoskins's motion for reconsideration, (Doc. 148), his motion for the Court to provide information regarding an appeal, (Doc. 149), his supplemental motion for reconsideration, (Doc. 151), his second supplemental motion for reconsideration, (Doc. 153), his motion for the Court to Consider, (Doc. 154), and his motion for the Court to Provide and Advise. (Doc. 156). For the reasons delineated below, each of these motions is **DENIED**.

FACTUAL BACKGROUND

Hoskins first reported developing cavities while he was incarcerated at Stateville Correctional Center ("Stateville"). (Doc. 106, p. 2). Though the Stateville dentist was able to fill one of Hoskins's cavities, he was not able to fill a cavity on tooth thirteen before Hoskins was transferred to Pinckneyville on June 5, 2019. *Id.* After his transfer from Stateville to Pinckneyville, Hoskins complained of dental pain and cavities. *Id.* at p. 16.

On June 24, 2019, Hoskins filed a grievance stating that he had dental pain, but security staff intercepted his requests to see the medical unit. (Doc. 106, p. 16). Hoskins again filed a grievance on July 30, 2019, stating that he had dental pain because he was not allowed toothbrushes and toothpaste by security staff. *Id.* On August 19, 2019, Hoskins filed a grievance again alleging that security staff would not provide a toothbrush or toothpaste. *Id.* at p. 17.

On September 27, 2019, Hoskins requested a nurse sick call for medical treatment after he was struck in the jaw. (Doc. 106, p. 3). Hoskins saw Defendant Chapman on referral for treatment to his jaw on October 3, 2019. *Id.* During the visit, Defendant

Case: 22-1847   Document: 30   Filed: 09/08/2022   Pages: 56

Chapman noted that Hoskins was able to talk normally. *Id.* Hoskins also did not appear to be in distress and did not grimace when physically examined. *Id.* Nevertheless, Defendant Chapman ordered an x-ray of Hoskins's jaw and provided him with a mouth guard. *Id.* The x-ray did not reveal any fractures or dislocations to Hoskins's jaw; however, Defendant Chapman scheduled Hoskins for a filling for tooth thirteen on October 22, 2019. *Id.*

On November 12, 2019, Defendant Chapman provided a filling for Hoskins's tooth thirteen. (Doc. 106, p. 4). At that time, Defendant found that Hoskins also had a cavity in tooth nineteen. *Id.* However, this cavity was visible only on an x-ray. *Id.* Hoskins did not report pain in connection with the cavity, so Defendant did not find an emergent need to fill the tooth. *Id.* Instead, Defendant placed Hoskins on a waiting list for a filling and advised him to use floss to clean his teeth. *Id.* During November 2019, Defendant saw approximately 278 patients for dental services. *Id.*

Hoskins filed additional grievances requesting dental care on February 24 and March 16, 2020. (Doc. 106 at p. 17 n.5). On March 20, 2020, the dental unit received a copy of one of Hoskins's grievances regarding his dental care. *Id.* at p. 4. Defendant Chapman noted that he received no contact from Hoskins since his November 12, 2019 appointment and that Hoskins requested no nurse sick calls about his dental complaints. *Id.* However, Defendant still scheduled Hoskins for a dentist appointment shortly thereafter. *Id.*

Hoskins next saw Defendant for a dentist appointment on March 31, 2020. (Doc. 106, p. 5). When Defendant examined Hoskins, he found no swelling, bleeding, pus or other signs of infection in his gums. *Id.* Hoskins did have a small incisal chip on tooth

twenty-two; however, Defendant was unable to repair the chip because the IDOC had
prohibited non-emergent dental interventions as a COVID-19 precautionary measure. *Id.*
Defendant was also unable to provide a filling for tooth nineteen, as the cavity on this
tooth was deemed non-emergent. *Id.*

Hoskins did not report pain or distress during his March 31, 2020 appointment
with Defendant, nor did there appear to be damage to the nerve root of tooth nineteen
which would have caused such pain. (Doc. 106, p. 5). After Hoskins was transferred to
Dixon Correctional Center in 2021, he saw a new dentist. *Id.* at p. 6. However, Hoskins
did not request pain medication for his yet un-filled cavity. *Id.* The IDOC maintained the
restrictions on non-emergent dentistry through May 2021. *Id.* Hoskins had not received a
filling for his tooth as of his May 3, 2021 deposition. *Id.*

The Court granted summary judgment in favor of Defendant Chapman on
February 24, 2022. (Doc. 144). Hoskins filed the present motion for reconsideration on
March 7, 2022. (Doc. 148). Without waiting for Defendant Chapman to respond, Hoskins
also filed three supplements to his motion for reconsideration on March 7, 2022; March
15, 2022; and March 16, 2022. (Doc. 151, 153, 154). The first of these supplements contains
an August 29, 2019 grievance, in which Plaintiff alleges that he has not been allowed to
buy toothbrushes or toothpaste from the commissary. (Doc. 151, p. 4). The second
supplement contains the Pinckneyville administration's and the Administrative Review
Board's ("ARB") responses to the grievance. (Doc. 153, p. 3-5). The ARB noted that
Hoskins last received dental care as of November 12, 2019, making this issue moot. *Id.* at
p. 3. That response was dated January 30, 2020. *Id.* Finally, in his third supplement,

Hoskins explains that he was initially referred to Dr. Myers on October 3, 2019, who then referred him to Defendant Chapman. (Doc. 154). In doing so, Dr. Myers reported Hoskins's statements that it hurt when he chewed. *Id.* Hoskins fails to explain either why he did not present these grievances with his initial response to Defendant Chapman's motion for summary judgment or why he did not make his argument regarding Dr. Myers in his response.

## LEGAL STANDARDS

Courts consider motions challenging the merits of a district court order as filed pursuant to either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Mares v. Busby,* 34 F.3d 533, 535 (7th Cir. 1994). Rule 59(e) authorizes relief only in "exceptional cases" and permits a court to amend an order or judgment only if the movant demonstrates a manifest error of law or fact, or if the movant presents newly discovered evidence that was not previously available. *Willis v. Dart*, No. 16-1498, 671 Fed. Appx. 376, 377 (7th Cir. Dec. 9, 2016)(quoting *Gonzalez–Koeneke v. West.,* 791 F.3d 801, 807 (7th Cir. 2015)); *Heyde v. Pittenger,* 633 F.3d 512, 521 (7th Cir. 2011); *see also Sigsworth v. City of Aurora, Ill.,* 487 F.3d 506, 511-512 (7th Cir. 2007). Movants must file a Rule 59(e) motion within twenty-eight days of the order.[1]

Relief under Rule 60(b) is also "an extraordinary remedy that is to be granted only in exceptional circumstances." *Willis,* 671 Fed. Appx. at 377 (quoting *Provident Sav. Bank v. Popovich,* 71 F.3d 696, 698 (7th Cir. 1995). *See also North. Cent. Ill. Laborers' Dist. Council*

---

[1]    As Plaintiff filed his motion on March 7, 2022, his motion is timely.

*v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164, 168 (7th Cir. 1988)(describing a Rule 60(b) ruling as "discretion piled upon discretion"). Rule 60(b) permits a court to relieve a party from an order or judgment based on such grounds as mistake, surprise or excusable neglect by the movant; fraud or misconduct by the opposing party; a judgment that is void or has been discharged; or newly discovered evidence that could not have been discovered within the 28-day deadline for filing a Rule 59(e) motion.

Plaintiff reasserts that Defendant Chapman failed to see him until November 2019, despite his August 20, 2019 referral. (Doc. 148, p. 2). Plaintiff also claims that his cavity was extracted, rather than filled; however, he does not assert that this was due to Defendant Chapman's alleged lack of care. *Id.* Furthermore, Plaintiff states the Court's decision which relied on Defendant Chapman's x-rays of Plaintiff's jaw is inaccurate because x-rays only show fractures or dislocations, rather than cavities. *Id.* Plaintiff further asserts that Defendant Chapman did not state in his interrogatories that Plaintiff's condition was not a serious medical need. *Id.* Finally, Plaintiff argues that Defendant Chapman had notice of the grievances Plaintiff filed about his treatment, supporting his claim for retaliation. *Id.* Because Plaintiff's arguments rely on factual propositions, the Court finds that they are most similar to the manifest error of fact standard outlined in Rule 59(e).

ANALYSIS

### I.   Plaintiff's supplementary motions

As an initial matter, the Court strikes as redundant and immaterial Plaintiff's motions to supplement or to advise the Court. (Doc. 151, 153, 154). Under Federal Rule of

Civil Procedure Rule 12(f), the Court may, *sua sponte* or on motion, strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. *See Kreher v. Polaris Industries, Inc.*, Case No. 20-cv-126-DWD, <u>2020 WL 7263285</u>, at *3 (S.D. Ill. Dec. 10, 2020) (internal citations omitted). Rule 12 is intended to avoid unnecessary expenditures of time and money by removing material irrelevant to the matter of controversy. *See Miller v. PAM Transport Inc.*, Case No. 19-cv-242-JPG-GCS, <u>2019 WL 4962954</u>, at *2 (S.D. Ill. Oct. 8, 2019) (internal citations omitted). However, motions to strike are generally disfavored. *Id.* A moving party must therefore show prejudice in order to succeed on a motion to strike. *Id.* (internal citations omitted). The Court should grant a motion to strike when the material at issue bears no logical relation or connection to the subject matter of the controversy and causes significant prejudice to one or more of the parties. *Id.* (internal citations omitted); *see also Talbot v. Robert Matthews Distributing Co.*, <u>961 F.2d 654, 665-666</u> (7th Cir. 1992).

Though a disfavored remedy, striking Hoskins's repetitive supplements is appropriate in this case. Hoskins does not explain why he failed to submit the grievances he now relies on during the appropriate time frame for discovery, or when responding to Defendant Chapman's motion for summary judgment. In fact, he fails to explain why he could not bring this evidence when he filed his motion for reconsideration. By failing to timely present this evidence, Hoskins has deprived Defendant Chapman of the opportunity to appropriately address these claims either in a motion for summary judgment or in a reply to Hoskins's response. Furthermore, by filing his motions to supplement sporadically, with one new motion to supplement every week, Hoskins has

deprived Defendant Chapman of the opportunity to reply to his motions to supplement in one response.

Furthermore, the Court finds that these supplements are both redundant and immaterial. The grievances Hoskins relies on only reiterate his claims that he was not timely seen by Defendant Chapman. However, as Defendant Chapman points out, Plaintiff's timeline is not supported by the evidentiary record. (Doc. 155, p. 2). Though Plaintiff may be internally consistent when claiming Defendant Chapman did not see him until November 2019, Plaintiff's medical records show that Defendant Chapman actually saw him on October 3, 2019. (Doc. 106, p. 2). Plaintiff's grievances, and his record showing a referral to Defendant Chapman, are therefore immaterial in this case. Because Plaintiff's supplements are immaterial, redundant, and highly prejudicial to Defendant Chapman, the Court STRIKES the motions containing these supplements. (Doc. 151, 153, 154).

The Court further wishes to make clear to Hoskins that continuous frivolous filings are not the proper procedure for directing the Court's attention. For example, Hoskins filed a motion for the Court to Provide and Advise on March 21, 2022, reiterating his desire to appeal if the motion for reconsideration is denied. (Doc. 156). This motion is duplicative of his motion for the court to provide plaintiff with notice of appeal and instructions. (Doc. 149). In between these filings, Hoskins also filed an additional three motions to supplement, all approximately one week apart. (Doc. 151, 153, 154). For every document the Hoskins files, the Court *must* allow the Defendant Chapman time to respond. Often before that response time has run, Hoskins has already filed another

document, which triggers another response period. The Court was simply waiting for a lull in filings to address everything before it.

Hoskins's case is not the undersigned's only responsibility. In fact, the undersigned is currently responsible for approximately 115 civil cases aside from Hoskins's case, in addition to a large number of criminal matters during criminal duty months, and other miscellaneous tasks such as settlement conferences. The Court understands that one of the key principles it should adhere to is to resolve cases in a just, speedy, and inexpensive fashion. *See* FED. R. CIV. PROC. 1. The undersigned does everything possible to manage his caseload as efficiently and speedily as possible. But, by inundating the Court with motions and other documents, Hoskins is actually working against his own interest in moving his case along more quickly. The Court is forced to spend significant time reviewing Hoskins's handwritten submissions, which are often rambling and/or immaterial. It is also always extremely difficult to read (to the point of being illegible, at times). Quite simply, these filings bog the Court down and divert the Court's attention and resources from issuing the decisions necessary to allow this matter to progress.

Furthermore, Hoskins knows better than to engage in this type of behavior. He is not a first-time litigant. He has furthermore been cautioned at least once before about constantly filing redundant and duplicative motions. *See Hoskins v. Dilday, et al.,* SDIL Case No. 16-334 (Doc. 31); *Hoskins v. Swisher,* SDIL Case No. 20-cv-395-MAB (Doc. 160). The Court is not required to endure repetitive and frivolous filings by a pro se plaintiff, which tax the limited resources of the Court and unfairly consume time the Court needs

to serve other litigants seeking relief in the federal court system. *See, e.g., Alexander v. United States*, 121 F.3d 312, 315-316 (7th Cir. 1997)(applying monetary sanctions for duplicative filings in a habeas case). Hoskins is hereby warned that if he continues to inundate the Court with filings, the Court will issue whatever sanction may be warranted, which could include a monetary fine, a filing prohibition, or dismissal of his case, in order to deter him from continuing his abusive filing practices. Hoskins is urged to proceed mindfully and to limit his filings to necessities that truly require a court decision. Such an exercise of personal discretion by the Hoskins will assist the Court in addressing the heart of his concerns in a more expeditious fashion. As Hoskins's motion to Provide and Advise is duplicative, the Court therefore also strikes this motion. (Doc. 156).

## II.     Plaintiff's motion for reconsideration

Hoskins's arguments in support of his motion for reconsideration are not well taken. Hoskins first asserts that he was referred to Defendant Chapman in August 2019, but not seen until November 2019. (Doc. 148, p. 2). He further claims that the October 2019 visit to Defendant Chapman is immaterial because Defendant Chapman saw him on referral, rather than of his own volition. *Id.* Accordingly, Hoskins argues that these facts show that Defendant Chapman was deliberately indifferent to Hoskins's pain because he delayed Hoskins's treatment. *Id.*

Delays in treating painful medical conditions may support a claim under the Eighth Amendment even when the underlying condition for which treatment is sought is not life-threatening. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). An

inexplicable delay in treatment which serves no penological interest may support an inference that prison officials were deliberately indifferent to an inmate's serious medical needs. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)(citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)). *See also Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007)(holding that defendants were deliberately indifferent when they denied the plaintiff treatment for his dislocated finger for two days). When determining whether a delay indicates deliberate indifference, courts consider the seriousness of the condition for which treatment is delayed and the ease of providing treatment for that condition. *Id.* Furthermore, in order to predicate an Eighth Amendment claim on a delay in treatment, a plaintiff must show that the delay exacerbated the injury or unnecessarily prolonged pain. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007).

A significant delay in treatment clearly supports finding deliberate indifference when the materials for treatment are widely available and easily obtainable. *See, e.g., Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015)(finding that the defendants' delay in providing the plaintiff with over-the-counter pills to treat gastro-esophageal reflux disease for two months demonstrated deliberate indifference). Even a short delay may be indicative of deliberate indifference when an inmate's condition causes considerable pain. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). For example, in *Rodriguez*, prison staff incorrectly administered an intravenous line in the plaintiff's arm. *Id.* at 819-820. During the plaintiff's four-day hospital stay, staff treated plaintiff's resulting pain by pushing the intravenous line further into the plaintiff's arm and providing him with an ice pack. *Id.* at 832. As a result of the delay in treatment, the

plaintiff developed a serious and contagious infection. *Id.* The Seventh Circuit found that, given the alleged facts, the plaintiff sufficiently stated a claim under the Eighth Amendment to survive a motion to dismiss. *Id.* In contrast, a similar delay for a less painful condition may be tolerated under the Eighth Amendment. *See, e.g., Gutierrez,* 111 F.3d at 1374 (finding that the plaintiff could not survive summary judgment when officials delayed treating a mild cyst infection for six days).

Courts recognize that "delays are common in a prison setting with limited resources[.]" *Petties,* 836 F.3d at 730. Prison officials, however, must provide treatment sufficient to meet the "civilized minimum of public concern for the health of prisoners." *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999). This civilized minimum is "a function of both objective need and of cost." *Id.* When the cost of providing treatment is low, the failure to do so is especially indicative of deliberate indifference. *See Id.* For instance, in *Gil v. Reed,* the defendant denied the plaintiff his pain medication, although that medication had been prescribed and dispensed before the plaintiff requested it. 381 F.3d 649, 662 (7th Cir. 2004). The prescribed antibiotic was necessary to treat a severe infection; though the plaintiff obtained the medication the following day, the Seventh Circuit found the delay demonstrated deliberate indifference. *Id.* Similarly, in *Wynn v. Southward,* the plaintiff repeatedly informed prison officials that he needed his heart medication "immediately" in order address a heart flutter and substantial chest pains. 251 F.3d 588, 594 (7th Cir. 2001). Citing to *Ralston,* the Seventh Circuit noted that the defendants' delay in providing the plaintiff's necessary heart medication supported a claim for deliberate indifference under the Eighth Amendment. *Id.*

Even if Defendant Chapman saw Hoskins on referral in October 2019, this visit still weighs against finding an unconstitutional delay in medical treatment. Defendant Chapman points out that he regularly took action to alleviate Hoskins's complaints of tooth pain when he saw Hoskins for treatment. (Doc. 106, p. 12). For example, when Hoskins saw Defendant Chapman on October 3, 2019, Defendant Chapman ordered Hoskins a mouth guard to alleviate his pain and ordered an x-ray of his jaw. *Id.* On November 12, 2019, Defendant Chapman found that Hoskins had a cavity in tooth nineteen, but informed him that the cavity was only visible from the x-ray, indicating that it would not cause significant pain. *Id.* Defendant Chapman then exercised his medical judgment to place Hoskins on the waiting list for a filling. *Id.* However, as the waiting list for dental treatment was full during November 2019, with Defendant Chapman seeing approximately fifteen to sixteen inmates per day for treatment, Defendant Chapman was not able to fill Hoskins's cavity immediately. *Id.* at p. 13 n.2. Defendant Chapman's ability to quickly treat Hoskins's cavity was further limited by the imposition of COVID-19 precautionary measures. When Defendant Chapman saw Hoskins in March 2020, he was not able to treat Hoskins's cavity per the safety regulations in place at the time because Hoskins did not appear to have symptoms severe enough to constitute an emergency. *Id.* at p. 12. Each time Defendant Chapman saw Hoskins, he provided him medical care. Further, Defendant Chapman reasonably saw Hoskins within a two-month timeframe, when Hoskins did not have emergent pain. Accordingly, this evidence does not warrant a reconsideration of the Court's original Order.

Hoskins also asserts that his extraction while he was incarcerated at Dixon shows that he had significant pain. (Doc. 148, p. 2). However, this evidence does not suggest that the Court's evaluation of Hoskins's treatment is insufficient. In order to succeed on a claim for deliberate indifference to a serious medical need against a physician, a plaintiff must show that the defendant-physician's decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Even if there is evidence that at least some medical professionals would have chosen to pursue a different course of treatment, this, standing alone, is insufficient to defeat summary judgment. *See Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). Because a physician's treatment decisions are necessarily predicated on each individual patient's symptoms and medical necessities, delineating between acceptable differences of opinion and deliberate indifference often escapes a bright line analysis. *See Petties*, 836 F.3d at 729. The few instances in which courts do approach a bright line analysis includes when a physician ignores a specialist's recommendations, *see Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); when a physician fails to follow existing protocol, *see Petties*, 836 F.3d at 729 (citing *Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005); and when a physician chooses an easier course of treatment even when that treatment is less effective than other available options, *see Walker v. Peters*, 233 F.3d 494, 498 (7th Cir. 2000). Inherent to each of these situations is the defendant physician's ability to make a decision impacting the plaintiff's medical treatment and care. *Cf. Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015)(acknowledging that showing "someone else was responsible" could support

granting summary judgment after discovery); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)(upholding a decision granting summary judgment when the plaintiff failed to show that delay between the initial visit, diagnosis and specialist's treatment were within the defendant physician's control). Hoskins provides no evidence that Defendant Chapman failed to follow a specialist's advice, existing protocol, or that he took a less effective approach without reason. Accordingly, this evidence also fails to support reconsideration.

Third, Hoskins claims that x-rays only show fractures or dislocations. However, this evidence cannot support reconsideration because it is not accurate. As a medical expert, Defendant Chapman explained that he used x-rays to identify and determine the extent of the cavity on Hoskins's tooth nineteen. (Doc. 24, Exh. 2). Hoskins provides no medical expertise to claim to the contrary, and the Court will not credit Hoskins's unsubstantiated claims over Defendant Chapman's medical expertise.

Hoskins next asserts that Defendant Chapman failed to state in his interrogatories that Hoskins's condition was not a serious medical need. (Doc. 148). However, Defendant Chapman *does* state in his interrogatories that Hoskins had a "chipped tooth and non-observable cavity [which] did not require emergent treatment nor did they appear to be painful as these conditions typically do not cause pain unless they become infected or damage the nerve root, which they were not." (Doc. 148, p. 12). As Hoskins's claim is factually incorrect, it likewise does not support reconsideration.

Finally, Hoskins argues that Defendant Chapman's failure to pursue the affirmative defense of exhaustion of remedies suggests that he was on notice that Hoskins

had filed grievances against him, and therefore had motive to retaliate against him. (Doc. 148). However, this logic fails. The element of notice refers to the prison administration's notice that an inmate has described a potential concern, rather than the notice of the defendant that an inmate has a problem with them. *See* (Doc. 155, p. 4). Furthermore, the Court found that Hoskins failed to demonstrate that there was a causal connection between Hoskins's grievance and Defendant Chapman's conduct. (Doc. 144, p. 18). This evidence does not indicate otherwise. Accordingly, reconsideration of the Court's original Order is not warranted.

If Hoskins wishes to appeal the dismissal of this case, his notice of appeal must be filed with this Court within thirty days of the entry of judgment or order being appealed from. *See* FED. R. APP. PROC. 4(a)(1)(A). If the appeal is frivolous, this Court will not grant him leave to proceed *in forma pauperis* ("IFP") in an appeal from the dismissal of this action. Instead, he will be liable for the $505.00 appellate filing fee. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-726 (7th Cir. 2008). The present motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) motion has stopped the 30-day clock for filing a notice of appeal (the clock will start again once the undersigned rules on the motion). *See* FED. R. APP. PROC. 4(a)(4). However, that clock restarts as of the filing of this order. Accordingly, Hoskins may move to appeal on or before **May 20, 2022.**

## CONCLUSION

For the above stated reasons, Hoskins's motion for reconsideration (Doc. 148) is **DENIED.** His motion for the Court to provide information regarding an appeal (Doc.

Case: 22-1847   Document: 30   Filed: 09/08/2022   Pages: 56

149) is **MOOT**. Finally, the Court **STRIKES** Hoskins's supplemental motion for reconsideration (Doc. 151), his second supplemental motion for reconsideration (Doc. 153), his motion for the Court to Consider (Doc. 154), and his motion for the Court to Provide and Advise (Doc. 156).

  **IT IS SO ORDERED.**

  **DATED:  April 20, 2022.**

Digitally signed
by Judge Sison 2
Date: 2022.04.20
15:22:33 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**